1  Kimberly E. Colwell, Esq. (SBN: 127604)
   kcolwell@meyersnave.com
2  Kevin E. Gilbert, Esq. (SBN: 209236)
   kgilbert@meyersnave.com
3  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
4  Oakland, CA  94607
   Telephone: (510) 808-2000
5  Facsimile: (510) 444-1108

6  Attorneys for Defendant
   CITY OF BELL

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  DAVID MANGO,                    Case No. CV11 - 05641 GW (FFMX)

11          Plaintiff,
                              DEFENDANT CITY OF BELL'S NOTICE
12  v.                        OF REMOVAL OF ACTION UNDER 28
                              U.S.C. §§ 1331 AND 1441(b) & (c)
13  CITY OF MAYWOOD, a municipal
    corporation; CITY OF BELL, a municipal   [Removal based on Federal Question]
14  corporation; LILIAN MYERS, individually and
    in her official capacity; EDWARD VARELA,   
15  individually and in his official capacity;
    VERONICA GUARDADO, individually and in
16  her official capacity; FELIPE AGUIRRE,
    individually and in his official capacity;
17  THOMAS MARTIN, individually and in his
    official capacity; ANA ROSA RIZO,
18  individually and in her official capacity; and
    DOES 1-25,
19
            Defendants.
20

21  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

22          PLEASE TAKE NOTICE THAT Defendant City of Bell hereby removes to this Court the state

23  court action described below:

24          1.      On May 12, 2011, an action was commenced in the Superior Court of the State of

25  California, in and for the County of Los Angeles, entitled "David Mango, Plaintiff v. CITY OF

26  MAYWOOD, a municipal corporation; CITY OF BELL, a municipal corporation; LILIAN MYERS,

27  individually and in her official capacity; EDWARD VARELA, individually and in his official

28  capacity; VERONICA GUARDADO, individually and in her official capacity; FELIPE AGUIRRE,

                                    1

Defendant City of Bell's Notice of Removal

individually and in his official capacity; THOMAS MARTIN, individually and in his official capacity; ANA ROSA RIZO, individually and in her official capacity; and DOES 1-25, Defendants." It was assigned case number BC461000 by the Los Angeles County Superior Court. This action is attached hereto as Exhibit A.

2.     The first date upon which Defendant City of Bell received a copy of the Complaint was within the last 30 days, on or about June 8, 2001, when Defendant City of Bell's City Clerk was served.

3.     This action is a civil action in which this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1441(b) & (c) in that the nature of the claims purport to arise under the Constitution and laws of the United States and is one that may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) & (c). Specifically, the Complaint alleges violations of Plaintiff's rights under 42 U.S.C. § 1983 (Fourth and Fifth Causes of Action in Complaint for Violation of 42 U.S.C. § 1983).

4.     Defendant City of Bell contacted counsel for all other Defendants and they were agreeable to the Removal on behalf of all other Defendants.


Dated:  July 8, 2011                          Respectfully submitted,

                                              MEYERS, NAVE, RIBACK, SILVER & WILSON


                                              By:_____
                                                    Kimberly E. Colwell
                                                    Attorney for Defendant
                                                    CITY OF BELL


1672452_1.DOC

2

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>CITY OF MAYWOOD, a municipal corporation *(see attachment 1)*<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>DAVID MANGO | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br>**CONFORMED COPY**<br>**OF ORIGINAL FILED**<br>Los Angeles Superior Court<br><br>MAY 12 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>A. E. LaFLEUR-CLAYTON |

RECEIVED JUN 08 2011  9:07 am

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Los Angeles Superior Court - Central District<br>111 N. Hill Street, Los Angeles, California  90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>B C 4 6 1 0 0 0 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Dan Stormer, Hadsell Stormer, et al., 128 N. Fair Oaks Ave., Pasadena, California 91103, (626) 585-9600

DATE: May 12, 2011   JOHN A. CLARKE, CLERK   Clerk, by _____, Deputy
*(Fecha)*                                              *(Secretario)*                                    *(Adjunto)*

A. E. LaFLEUR-CLAYTON

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]   MAY 12 2011

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* CITY OF BELL, A MUNICIPAL CORPORATION

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☒ other *(specify):* CCP 416.50 (PUBLIC ENTITY)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

## EXHIBIT A

## ATTACHMENT TO SUMMONS

CITY OF BELL, a municipal corporation; LILIAN MYERS, individually and in her official capacity; EDWARD VARELA, individually and in his official capacity; VERONICA GUARDADO, individually and in her official capacity; FELIPE AGUIRRE, individually and in his official capacity; THOMAS MARTIN, individually and in his official capacity and ANA ROSA RIZO, individually and in her official capacity, and DOES 1-25,

Defendants.

LAW OFFICES OF SCOTT R. AMES
A PROFESSIONAL CORPORATION
Scott R. Ames, Esq. [S.B. # 146093]
11377 West Olympic Blvd., Suite 500
Los Angeles, California  90064
Telephone:  (310) 478-2500
Facsimile:  (310) 478-2501

Dan Stormer, Esq, [S.B. # 101967]
Radhika Sainath, Esq. [S.B. # 259318]
HADSELL STORMER KEENY
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone:  (626) 585-9600
Facsimile:  (626) 577-7079

Attorneys for Plaintiff
DAVID MANGO

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 12 2011

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
A.E. LaFLEUR-CLAYTON

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

BC461000

| | |
|---|---|
| DAVID MANGO,<br><br>       Plaintiff,<br><br>vs.<br><br>CITY OF MAYWOOD, a municipal corporation; CITY OF BELL, a municipal corporation; LILIAN MYERS, individually and in her official capacity; EDWARD VARELA, individually and in his official capacity; VERONICA GUARDADO, individually and in her official capacity; FELIPE AGUIRRE, individually and in his official capacity; THOMAS MARTIN, individually and in his official capacity and ANA ROSA RIZO, individually and in her official capacity, and DOES 1-25,<br><br>       Defendants. | Case No:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.   **BREACH OF WRITTEN CONTRACT (against Maywood)**<br><br>2.   **BREACH OF WRITTEN CONTRACT (against Bell)**<br><br>3.   **VIOLATION OF LABOR CODE § 1102.5**<br><br>4.   **VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION (42 U.S.C. § 1983);**<br><br>5.   **VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION (42 U.S.C. § 1983)**<br><br>6.   **FAILURE TO PAY MINIMUM WAGE**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**

Plaintiff DAVID MANGO alleges as against defendants the CITY OF MAYWOOD, the CITY OF BELL, LILIAN MYERS, EDWARD VARELA, VERONICA GUARDADO, FELIPE AGUIRRE, THOMAS MARTIN, and ANA ROSA RIZO, as follows:

### INTRODUCTION

1.      Plaintiff David Mango ("Mango") worked for the City of Maywood ("Maywood") for over 20 years, and in the last few months of his employment Mango worked jointly for Maywood and the City of Bell ("Bell"). Mango had entered into written employment contracts with both Maywood and Bell. Beginning in August, 2008, Mango complained to the FBI that certain members of Maywood's City Council were misusing public funds. Mango also complained that one of Maywood's vendors was attempting to exert undue influence over certain Maywood City Council members through improper means. At the request of the FBI, Mango wore surveillance equipment at several lunches with this vendor. At two of these lunches, the vendor provided Mango with envelopes containing $3,000 in cash, or a total of $6,000, which Mango provided to the FBI. On August 13, 2010, Mango told his supervisor and Maywood City Manager Lilian Myers ("Myers") that he had complained to the FBI that two Maywood City Council members had misused public funds, that the FBI was investigating these City Council members and Maywood's relationship with the vendor in question, and that he had a meeting scheduled with the United States Attorneys' Office to discuss these matters further. Myers terminated Mango's employment with the cities of Maywood and Bell two weeks later. Mango is seeking damages, general damages, special damages, punitive damages, statutory penalties, attorneys' fees and costs of suit against the defendants herein.

### THE PARTIES

2.      Plaintiff DAVID MANGO (hereinafter "Plaintiff" or "Mango") is, and at all times herein relevant was, an individual residing in the County of Los Angeles, State of California.

3.      The acts alleged herein took place in the County of Los Angeles, State of California.

4.      Defendant the CITY OF MAYWOOD (hereafter "Maywood") is, and at all times herein relevant was, a municipal corporation incorporated under the laws of the State of California, and a public entity located in the County of Los Angeles.

///

**COMPLAINT FOR DAMAGES**

5.     Defendant the CITY OF BELL ("Bell"), is, and at all times herein relevant was, a municipal corporation incorporated under the laws of the State of California, and a public entity located in the County of Los Angeles.

6.     Defendant LILIAN MYERS ("Myers"), is, and at all times herein relevant was, the City Manager of Maywood.

7.     Defendant EDWARD VARELA ("Varela"), is, and at all times herein relevant was, a member of Maywood's City Council.

8.     Defendant VERONICA GUARDADO ("Guardado"), is, and at all times herein relevant was, a member of Maywood's City Council.

9.     Defendant FELIPE AGUIRRE ("Aguirre"), is, and at all times herein relevant was, a member of Maywood's City Council.

10.    Defendant THOMAS MARTIN ("Martin"), is, and at all times herein relevant was, a member of Maywood's City Council.

11.    Defendant ANA ROSA RIZO ("Rizo"), is, and at all times herein relevant was, a member of Maywood's City Council.

12.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 25, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that at all times herein relevant each such fictitiously named defendant was and is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries and/or damages were and are directly and/or proximately caused thereby. Plaintiff is informed and believes and thereon alleges that each such fictitiously named defendant is directly and/or indirectly liable on one or more of the causes of action set forth herein. Maywood, Bell, and the DOE defendants will sometimes be collectively referred to as the "Defendants."

13.    Plaintiff is informed and believes and thereon alleges that at all times herein relevant, each of the Defendants, including each fictitiously named defendant, was the agent, servant, joint venturer, authorized representative and/or employee of each of the remaining defendants, and, except as provided herein, in doing the acts and things hereinafter alleged, was acting within the course and scope of said agency, joint venture, representation, servitude and/or employment, consent, approval, and

2

**COMPLAINT FOR DAMAGES**

1  subsequent satisfaction of each of the remaining defendants.  Each of the Defendants was authorized and

2  empowered by each of the other defendants to act and did act as the principal, employee or agent of each

3  of the other defendants.  Plaintiff is further informed and believes and thereon alleges that, except as

4  provided herein, each defendant was acting within the course and scope of his/her/its authority in

5  performing the acts herein alleged, and that the acts of each defendant as alleged herein were authorized

6  and/or ratified by the other defendants.

7  ## BACKGROUND RE: PLAINTIFF'S EMPLOYMENT WITH MAYWOOD

8       14.     On or about December 1, 1990, Maywood hired Plaintiff as a full-time building

9  inspector/code enforcement officer.  Plaintiff remained in this position for the next 10 years, during

10 which time he received excellent performance reviews and commendations regarding his work.

11      15.     In or around July, 2000, Maywood offered Plaintiff the position of Interim Director of

12 Building & Planning.  Maywood's City Council approved Plaintiff's appointment for a twelve month

13 probationary period.  At the end of his probationary period, Maywood offered Plaintiff the position of

14 Director of Building & Planning ("Director"), on a permanent basis.  In or around July, 2001, Plaintiff

15 and Maywood entered into a written employment agreement regarding Plaintiff's permanent

16 appointment to the position.

17      16.     Plaintiff excelled as Maywood's new Director of Building & Planning as evidenced by

18 his next 10 years of uninterrupted service in the position, his contract renewal in July, 2007, the added

19 responsibilities given to him, his excellent performance reviews, and by his accomplishments.  In

20 addition to serving as the Director, he also served as Maywood's Building Maintenance Supervisor, he

21 provided direction and support to Maywood's Redevelopment Agency, and he provided technical

22 assistance regarding the issuance of tax increment redevelopment bonds.  Plaintiff also oversaw the

23 acquisition, environmental remediation and grant administration of a 7.3 acre plot of industrial property

24 which Maywood acquired and converted to a regional park.  A major portion of this land had been

25 designated a Superfund site by the EPA, and Plaintiff worked tirelessly in meeting the EPA's

26 remediation requirements and in overseeing the conversion of this site to a regional park. The project

27 was completed in 2007, and Plaintiff received recognition from the EPA for his outstanding work on the

28 project.

**COMPLAINT FOR DAMAGES**

## THE OPERATIVE WRITTEN EMPLOYMENT AGREEMENT WITH MAYWOOD

17.    On or about August 14, 2007, Plaintiff and Maywood entered into a second written employment contract (the "Maywood Contract). Mango signed the Maywood Contract and provided it to a Maywood representative, was present when Maywood's City Council approved the Maywood Contract, and is informed, believes and thereon alleges that a Maywood representative signed the contract after it was approved.   A true and correct copy of the Maywood Contract is attached hereto as Exhibit "A".  The essential terms of the Maywood Contract are as follows:

a.    Maywood agreed to provide Plaintiff with a 4% increase on his then base salary of $6,978 per month effective and retroactive to July 1, 2007 (§ 4(A));

b.    Maywood agreed to provide Plaintiff with salary increases of no less than 4% a year (§ 4(A));

c.    Maywood agreed to provide Plaintiff with 7% longevity and 8% educational incentives (§ 4(A));

d.    Maywood agreed to provide Plaintiff with vacation leave at the annual rate of 192 hours per year up to a maximum of 280 hours (§ 4(F));

e.    Maywood agreed to provide Plaintiff with sick leave at the rate of 8 hours per month up to a maximum of 480 hours (§ 4(G));

f.    Maywood agreed to provide Plaintiff with personal leave of 40 hours per year (§ 4(H));

g.    Payment of all accrued, vacation and sick leave upon termination of employment which Mr. Mango received (§ 4(J));

h.    Maywood agreed to pay Plaintiff all sick leave accrued over 480 hours and all accrued vacation of over 280 hours on an annual basis (§ 4(K));

i.    Maywood was required to provide Plaintiff with at least 30 days written notice in the event Maywood desired to terminate his employment and the Maywood Contract (§ 3(B)); and

///
///

4

**COMPLAINT FOR DAMAGES**

j.    Maywood agreed to provide Plaintiff severance in an amount equal to 6 months salary calculated at Plaintiff's highest monthly rate in the event Maywood terminated his employment and the Maywood Contract without just cause (§ 3(B)(1)).

## MAYWOOD CITY COUNCIL MEMBER THOMAS MARTIN THREATENS PLAINTIFF'S EMPLOYMENT IN RETALIATION FOR PLAINTIFF'S COMPLAINTS ABOUT MISUSE OF PUBLIC FUNDS

18.    In July, 2007, Plaintiff objected to various projects proposed by Maywood's Civil Engineer and outside contractor AAE Engineering, Inc. ("AAE") because the projects were unnecessary and not in the public's interest. One of these projects was a $21,000 proposal to study Maywood's express bus stops. Plaintiff urged the Council not to approve this or AAE's proposals, stating it was a misuse of public funds. Despite Plaintiff's objections, Maywood's City Council approved the express bus study and other AAE projects by a unanimous vote. At the conclusion of a City Council meeting in late July, 2007, Maywood's then City Attorney Francisco Leal asked Plaintiff to meet privately with him and Maywood City Council member Martin. At this meeting, Martin stuck his finger in Plaintiff's face, raised his voice, and told him to "shut-up about AAE" and that he will be fired unless he becomes a "team player."

## PLAINTIFF REPORTS HIS CONCERNS ABOUT AAE AND CERTAIN MAYWOOD CITY COUNCIL MEMBERS TO THE FBI

19.    Plaintiff was extremely troubled by Martin's threats, and by Martin's cozy relationship with AAE. In August, 2007, Plaintiff spoke to a member of Maywood's police department regarding Maywood's apparent misuse of public funds. The Maywood police officer told Plaintiff that the FBI was investigating AAE, and he asked Plaintiff if he would be willing to speak to the FBI about his concerns. Plaintiff agreed.

20.    In or around August or September, 2007, two FBI agents contacted Plaintiff and the three of them met at a Starbucks in Huntington Park, California. The FBI agents' questions were focused on AAE and its relationship with Martin. Plaintiff told the FBI that Martin had told him to back off regarding AAE, and that Martin had threatened his job after Plaintiff objected to several AAE proposals.

**COMPLAINT FOR DAMAGES**

1 The FBI agents told Plaintiff that AAE had contracts with several cities in Southeast Los Angeles, and

2 that the FBI was investigating AAE's relationship with these cities.

3   21. Plaintiff spoke with the FBI several times throughout 2007 and 2008 regarding Martin

4 and AAE. The FBI also questioned Plaintiff regarding Maywood City Council member Aguirre. The

5 FBI asked Plaintiff about Maywood awarding a $125,000 lead awareness contract to an entity called

6 Union De Vecinos ("UV"). Plaintiff told the FBI that Aguirre voted to award the contract to UV, that

7 Aguirre had a relationship with UV, and that the City Council was required to give public notice of the

8 project and to receive and review competing bids before awarding it to UV, but that it failed to do so.

9 Plaintiff also told the FBI that UV received over $300,000 from Maywood redevelopment bond funds,

10 and that Aguirre received a $95,000 grant from Maywood to refurbish the facade of one of his buildings.

11 Plaintiff told the FBI that all of this, and especially the $95,000 grant to Aguirre, was a misuse of public

12 funds.

13   22. In May, 2008, AAE submitted a request for final payment for the construction of a

14 handball court. The total cost of the project was more than $250,000. Plaintiff believed that AAE

15 overcharged Maywood and that the project should not have cost more than $50,000. Plaintiff reviewed

16 all of AAE's bills on this project, and he also contacted a former AAE employee about the project. The

17 former AAE employee told Plaintiff that AAE's President Ray Abassi ("Abassi") had paid off several

18 public officials including Maywood Council member Martin.

19   **THE FBI ASKS PLAINTIFF TO WEAR SURVEILLANCE EQUIPMENT**

20   23. Plaintiff contacted the FBI agents and told them what he had learned about Abassi and

21 AAE from the former AAE employee. The FBI agents responded by asking Plaintiff if he would agree

22 to set up lunch meetings with Abassi, and wear surveillance equipment on behalf of the FBI at these

23 meetings with Abassi. Plaintiff agreed.

24   24. Plaintiff met with Abassi approximately 8 times between June and August, 2008. All but

25 one of these meetings were lunch meetings. The one non-lunch meeting was a golf outing where Abassi

26 invited Plaintiff and other individuals. Abassi bought Plaintiff a full set of golf clubs, and golf clothing

27 which included new slacks, a shirt, golf shoes, socks and even a belt. Plaintiff provided all of these

28 items to the FBI agents when the golf outing ended. The FBI agents told Plaintiff that the cost of the

**COMPLAINT FOR DAMAGES**

1  golf clubs, clothing and shoes exceeded $2,000.

2      25.     The FBI agents met with Plaintiff before each one of his lunch meetings with Abassi, and

3  outfitted him with audio and video surveillance equipment.

4      26.     After a lunch meeting on July 16, 2008, Abassi asked Plaintiff to return to his car and sit

5  in the passenger seat.  Plaintiff complied, and Abassi motioned for Plaintiff to pick up an envelope

6  between the driver and passenger seats.  Plaintiff opened the envelope and it contained a large amount of

7  cash.  Abassi told Plaintiff to take it, which he did.  Plaintiff then left, met with the FBI agents, provided

8  them the envelope which contained $3,000 in cash.

9      27.     On August 13, 2008, Abassi provided Plaintiff with another envelope which contained

10  $3,000 in cash after a lunch meeting.  Like before, Plaintiff took the envelope, immediately went to his

11  meeting place with the FBI agents, and provided the cash to the agents.   Plaintiff then told the FBI that

12  he could not handle any further meetings or lunches with Abassi, and that he had done all he could.

13  Plaintiff has not met with or spoken to Abassi since August 13, 2008.

14  ## MAYWOOD CONTRACTS OUT ITS SERVICES TO THE CITY OF BELL AND ANGELA

15  ## SPACE BECOMES MAYWOOD'S INTERIM CITY MANAGER

16      28.     In or around March, 2010, Maywood entered into a contract with the City of Bell ("Bell")

17  whereby Bell agreed to provide a number of services for Maywood.  As a result, Angela SPACE

18  ("SPACE") became Maywood's Interim City Manager, and Plaintiff and Maywood's other employees

19  reported to her.  SPACE was also serving as the Assistant City Manager for Bell.

20  ## MAYWOOD TERMINATES PLAINTIFF'S EMPLOYMENT IN BREACH OF THE

21  ## MAYWOOD CONTRACT

22      29.     On June 27, 2010, Maywood's Mayor Rizo sent Plaintiff a letter that he was being laid-

23  off.  The letter specifically states "at no fault of your own, the City of Maywood has had no other choice

24  but to lay off a very loyal and tenured staff."

25      30.     On June 30, 2010, SPACE sent Plaintiff a letter notifying him his employment was

26  terminated effective that day because Maywood's "current situation prevents it from continuing [his]

27  employment."  Accordingly, Maywood terminated Plaintiff's employment without just cause.

28  Maywood, however, failed to provide him with 30 days written notice of his termination, and failed to

---

7

**COMPLAINT FOR DAMAGES**

1    provide him with 6 months severance, as required under the Maywood Contract.

2    **PLAINTIFF ENTERS INTO A WRITTEN AGREEMENT WITH BELL WHEREBY HE**

3    **CONTINUES TO SERVE THE CITY OF MAYWOOD AS DIRECTOR OF DEVELOPMENT**

4    **SERVICES**

5        31.    On July 1, 2010, Plaintiff entered into a written employment agreement with Bell (the

6    "Bell Contract"). Mango signed the Bell Contract and provided it to a Bell representative. Mango is

7    informed, believes and thereon alleges that Bell's City Council approved the contract, and is informed,

8    believes and thereon alleges that a Bell representative signed the contract after it was approved. A true

9    and correct copy of the Bell Contract is attached hereto as Exhibit "B". The essential terms of this

10   contract are as follows:

11           a.    Bell provides various administrative services to Maywood;

12           b.    Bell desires to employ Plaintiff as Director of Development Services to

13                 specifically service Maywood;

14           c.    Bell and Plaintiff desire to provide for certain procedures, benefits and

15                 requirements regarding Plaintiff's employment for Maywood services;

16           d.    Plaintiff shall have all powers, duties and responsibilities set forth in Maywood's

17                 Municipal Code and other applicable laws and regulations;

18           e.    That Plaintiff would be paid a salary of $5,152.47 every two weeks;

19           f.    That Plaintiff would be provided with at least 30 days written notice in the event

20                 of termination, and 6 months severance if he was terminated without cause.

21       32.    The duties and responsibilities that Plaintiff had been performing for Maywood as its

22   Director did not change. Plaintiff continued to serve as Maywood's Director of Building & Planning,

23   remained in his office at Maywood's City Hall, maintained his Maywood business cards, continued to

24   report to Maywood's City Council, and continued to perform the same duties and fulfill the same

25   responsibilities as he had for the last 10 years in this position. Accordingly, Maywood and Bell became

26   Plaintiff's joint employers on or about July 1, 2010, and they remained Plaintiff's joint employers up to

27   and including the date that Plaintiff's employment was terminated.

28   ///

---

8

**COMPLAINT FOR DAMAGES**

1    33.    In middle to late July, 2010, SPACE ceased working as Maywood's Interim City

2  Manager after her salary and benefits package at Bell were reported in the Los Angeles Times. SPACE

3  has since been arrested for misappropriating public funds.

4    **PLAINTIFF INFORMS MAYWOOD'S NEW CITY MANAGER OF HIS COMPLAINTS**

5    **ABOUT MAYWOOD CITY COUNCIL MEMBERS TO THE FBI, AND SHE TERMINATES**

6    **PLAINTIFF'S EMPLOYMENT**

7    34.    On or about August 12, 2010, Maywood hired Myers as its new Interim City Manager.

8  Plaintiff continued in his capacity as Maywood's Director, and now reported to Myers in addition to

9  Maywood's City Council.

10    35.    On or about August 13, 2010, Plaintiff met with Myers as she was his new supervisor.

11  During this meeting, Plaintiff told Myers that the U.S. Attorneys' Office had asked him to meet with

12  them on August 18, 2010, and that the meeting would likely last several hours. When Myers inquired

13  about the purpose of the meeting, Plaintiff told her that he had previously provided information to the

14  FBI about Maywood City Council member Martin and Martin's relationship with one of Maywood's

15  contractors AAE. He also told Myers that he believed the FBI was investigating Maywood City Council

16  member Aguirre, and that he believed that members of the U.S. Attorneys office wanted to meet with

17  him to discuss his complaints about Martin, Aguirre and AAE. Myers was visibly shaken and upset

18  when Plaintiff conveyed this information to her.

19    36.    Plaintiff also told Myers during this meeting that he had not been paid anything since July

20  1, 2010, and he asked Myers when he would be paid. Myers responded that she would look into it.

21    37.    On August 17, 2010, an article appeared in the Los Angeles Times stating that "Maywood

22  is under scrutiny from the FBI and other law enforcement agencies over two city deals with ties to [City

23  Council member] Aguirre and his allies, ... and that investigators are also looking into deals apparently

24  unrelated to Aguirre." The article goes on to state that Plaintiff expressed concerns about an

25  organization called Union de Vecinos, which has ties to Aguirre, and in particular expressed concerns

26  regarding UV's failure to account for approximately $360,000 it received to run a lead abatement

27  program in Maywood.

28  ///

**COMPLAINT FOR DAMAGES**

38. On August 18, 2010, Plaintiff met with FBI agents and members of the U.S. Attorneys' office and discussed his complaints about public corruption regarding Aguirre, Martin, and AAE.

39. On August 27, 2010, Myers called Plaintiff to her office. Also present was Herb Aguirre ("H Aguirre"), a former Maywood police officer. Myers told Plaintiff that his services were no longer needed and she terminated his employment. When Plaintiff asked for an explanation, Myers refused to give one. Myers told Plaintiff to pack his belongings and leave the premises immediately. Myers instructed H Aguirre to escort Plaintiff off the premises to his car.

40. Neither Maywood or Bell has paid Plaintiff any salary or benefits for the work he performed between July 1, 2010 and August 27, 2010.

## PLAINTIFF'S GOVERNMENT CLAIMS

41. On or about October 20, 2010, Plaintiff timely served claims for damages pursuant to Government Code § 900 et seq. on Maywood and Bell. True and correct copies of these claims are attached hereto as Exhibits "C" and "D", respectively.

42. Maywood did not respond to or take any action regarding the claim. On May 3, 2011, Bell rejected the claim.

## FIRST CAUSE OF ACTION FOR
## BREACH OF WRITTEN CONTRACT
### (As Against Maywood and Does 1-25)

43. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42, inclusive, as if fully set forth herein.

44. As set forth in paragraph 17 above, Maywood was required under the Maywood Contract to provide Plaintiff with at least 30 days in the event of termination. Further, Maywood was required under the Maywood Contract to pay Plaintiff severance in an amount equal to 6 months salary calculated at Plaintiff's highest monthly rate in the event Maywood terminated Plaintiff's employment and the Maywood Contract without just cause.

45. On or about June 30, 2010, Maywood terminated the Maywood Contract without just cause. On or about August 27, 2010, Maywood terminated Plaintiff's employment without just cause.

///

10
**COMPLAINT FOR DAMAGES**

46.     On or about June 30, 2010, and continuing thereafter, Maywood breached the Maywood Contract by failing to provide Plaintiff with at least 30 days notice of termination, and by failing to pay Plaintiff an amount equal to 6 months salary calculated at Plaintiff's highest monthly rate.

47.     Plaintiff has complied with all of the material terms of these agreements except for those excused by Maywood's breach.

48.     As a direct and proximate result of Maywood's breach of the Maywood Contract, Plaintiff has suffered special damages in the form of lost wages, benefits and other out of pocket expenses in an amount exceeding $70,000, or according to proof at trial.

**SECOND CAUSE OF ACTION FOR**

**BREACH OF WRITTEN CONTRACT**

**(As Against Maywood, Bell and DOES 1-25)**

49.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42, inclusive, as if fully set forth herein.

50.     As set forth in paragraph 31 and 32, above, Maywood and Bell were required to pay Plaintiff a salary of $5,152.47 every two weeks, were required to provide Plaintiff with at least 30 days notice in the event of termination, and were required to pay Plaintiff severance in an amount equal to 6 months salary in the event Plaintiff was terminated without cause.

51.     Maywood and Bell breached the Bell Contract as follows:

     a.     Maywood and Bell failed to pay Plaintiff any salary or wages from and after July 1, 2010;

     b.     Maywood terminated Plaintiff's employment on August 27, 2010 without cause, but failed to provide Plaintiff with at least 30 days written notice of said termination and failed to pay Plaintiff any severance.

52.     Plaintiff has complied with all of the material terms of these agreements except for those excused by Maywood and Bell's breach.

53.     As a direct and proximate result of Maywood's and Bell's breaches of the Bell Contract, Plaintiff has suffered special damages in the form of lost wages, benefits and other out of pocket expenses in an amount exceeding $95,000, or according to proof at trial.

11

**COMPLAINT FOR DAMAGES**

### THIRD CAUSE OF ACTION FOR

### VIOLATION OF LABOR CODE § 1102.5

#### (As Against Maywood, Bell and DOES 1-25)

54. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42, inclusive, as if fully set forth herein.

55. Labor Code § 1102.5 states in pertinent part as follows:

"(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

(e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)."

56. Maywood and Bell violated Labor Code § 1102.5 by terminating Plaintiff's employment after Plaintiff disclosed to Maywood's City Manager Myers that he had reported two Maywood City Council members to the FBI, and because he reported two Maywood City Council members to the FBI. Plaintiff reasonably believed that the information he reported to the FBI regarding the two Maywood City Council members constituted violations of or noncompliance with state or federal statutes, rules or regulations.

57. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective

12

1  damages in the amount according to proof at the time of trial.

2     58.    As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered

3  mental and emotional pain, distress and discomfort, all to his detriment and damage in amounts not fully

4  ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

5                              **FOURTH CAUSE OF ACTION FOR**

6  **VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION - 42 U.S.C.**

7                                    **§ 1983**

8                         **(As Against all Defendants except Bell)**

9     59.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42,

10  inclusive, as if fully set forth herein.

11    60.    Plaintiff's communications with the FBI, United States Attorneys' Office, Los Angeles

12  Times and Myers about the misuse of public funds by Aguirre and Martin were made by him as a

13  concerned citizen and were not made as part of Plaintiff's official duties as Maywood's Director of

14  Building & Planning.

15    61.    Plaintiff's communications regarding the misuse of public funds by Maywood City

16  Council members Aguirre and Martin were and are matters of public concern.

17    62.    Plaintiff's speaking as a concerned citizen to the FBI, United States Attorneys' Office,

18  Los Angeles Times and/or Myers regarding these matters of public concern was a substantial or

19  motivating factor for Defendants' termination of Plaintiffs' employment.

20    63.    The conduct complained of herein was undertaken pursuant to the policies, practices and

21  customs of Maywood and was sanctioned and approved by each of the individual named defendants,

22  including the Doe defendants, all of whom acted under color of law.

23    64.    Myers, as Maywood's City Manager, had final policymaking authority and was acting

24  within her authority and under color of law when she terminated Plaintiff's employment for engaging in

25  these communications.

26    65.    Maywood City Council members Varela, Guardado, Aguirre, Martin and Rizo, were

27  aware of Plaintiff's communications with the FBI, United States Attorneys' Office, and/or Los Angeles

28  Times and Myers about the misuse of public funds by Aguirre and Martin, and approved of and ratified

13

**COMPLAINT FOR DAMAGES**

1  the decision to terminate Plaintiff's employment for engaging in these communications. Varela,

2  Guardado, Aguirre, Martin and Rizo had final policymaking authority from Maywood concerning these

3  acts.

4      66.    Defendants herein, acting under color of state law and through their policies, practices

5  and customs, deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and

6  laws of the United States under the First Amendment as set forth herein.

7      67.    As the direct and legal result of Defendants' unlawful conduct, Plaintiff has suffered and

8  will continue to suffer reasonable, foreseeable and ascertainable damages, including but not limited to,

9  loss of earnings and other employment benefits, emotional distress, anxiety, embarrassment, humiliation,

10  loss of self-esteem, depression, and attorney's fees. Plaintiff is thereby entitled to general and

11  compensatory damages in amounts to be proven at trial.

12      68.    In engaging in the conduct alleged herein, Defendants Myers, Varela, Guardado, Aguirre,

13  Martin, Rizo and Does 1-25, acted oppressively, maliciously, fraudulently, and/or outrageously toward

14  Plaintiff, with conscious disregard for his known rights and with the intention of causing, and/or

15  willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff. In so acting,

16  these defendants intended to and did vex, injure and annoy Plaintiff. Therefore, an assessment of

17  punitive damages should be made against these defendants in amount sufficient to punish and prevent

18  them from engaging in this conduct in the future.

19  **FIFTH CAUSE OF ACTION FOR**

20  **VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.**

21  **CONSTITUTION -42 U.S.C. § 1983**

22  **(As Against all Defendants except Bell)**

23      69.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42,

24  inclusive, as if fully set forth herein.

25      70.    Plaintiff had a property interest in his continued employment with Maywood and Bell.

26      71.    Defendant Maywood and Defendants Myers, Varela, Guardado, Aguirre, Martin, Rizo

27  and Does 1-25 deprived Plaintiff of his property interest in his continued employment by terminating

28  him and/or ratifying the decision to terminate him, in violation of his written contracts.

**COMPLAINT FOR DAMAGES**

72.     Plaintiff was given no notice, in writing or in any other manner, that he was to be terminated.  Plaintiff first learned that he was being terminated on August 27, 2010, when Defendant Myers called Plaintiff to her office, verbally told Plaintiff that his services were no longer needed, instructed Plaintiff to pack his belongings, leave the premises immediately and had former Maywood police officer H Aguirre escort Plaintiff off the premises to his car.

73.     Defendants terminated Plaintiff without giving him a hearing or an opportunity to be heard at any time prior to or after his termination.  Plaintiff was never given any explanation as to any "charges" against him, the reason for his termination, an explanation of Defendants' evidence or an opportunity to respond, either in person or writing.

74.     Neither Maywood or Bell has paid Plaintiff any salary or benefits for the work he performed between July 1, 2010 and August 27, 2010. Plaintiff was also given no notice that he would not be paid for this work, nor was he offered the opportunity to be heard with regards to the deprivation of his salary and benefits.

75.     Defendants, by terminating Plaintiff and failing to pay him for work performed without notice or opportunity to be heard, violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and are therefore liable to Plaintiff under 42 U.S.C. § 1983.

76.     The conduct complained of herein was undertaken pursuant to the policies, practices and customs of Maywood and was sanctioned and approved by each of the individual named defendants, including Doe defendants 1-25, all of whom had final policymaking authority concerning the acts at issue.  Maywood had a custom, policy or practice of terminating employees without process.

77.     Defendants, acting under color of state law and through their policies, practices and customs, deprived Plaintiff of his due process right secured by the Constitution and laws of the United States under the Fifth and Fourteenth Amendments, by subjecting him, or through their deliberate indifference allowing others to subject him, to the loss of his employment and pay for time worked without notice, hearing, or opportunity to be heard.

78.     As the direct and legal result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages, including but not limited to,

**COMPLAINT FOR DAMAGES**

1  loss of earnings and other employment benefits, emotional distress, anxiety, embarrassment, humiliation,

2  loss of self-esteem, depression, and attorney's fees. Plaintiff is thereby entitled to general and

3  compensatory damages in amounts to be proven at trial.

4        79.     In engaging in the conduct alleged herein, Defendants Myers, Varela, Guardado, Aguirre,

5  Martin, Rizo and Does 1-25, acted oppressively, maliciously, fraudulently, and/or outrageously toward

6  Plaintiff, with conscious disregard for his known rights and with the intention of causing, and/or

7  willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff. In so acting,

8  these defendants intended to and did vex, injure and annoy Plaintiff. Therefore, an assessment of

9  punitive damages should be made against these defendants in amount sufficient to punish and prevent

10  them from engaging in this conduct in the future.

11  **SIXTH CAUSE OF ACTION FOR**

12  **FAILURE TO PAY MINIMUM WAGE**

13  **(As Against Maywood, Bell and DOES 1-12)**

14        80.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42,

15  inclusive, as if fully set forth herein.

16        81.     Section 4 of Wage Order 4-2001, which is promulgated by The Industrial Welfare

17  Commission's ("IAC"), requires every employer pay minimum wages of at least $8.00 per hour. Labor

18  Code § 1194 provides that an employee receiving less than the legal minimum wage is entitled to

19  recover the full amount of this wage, including interest, attorneys' fees and costs of suit.

20        82.     Maywood and Bell violated Section 4 of Wage Order 4-2001, and Labor Code § 1194, by

21  failing to pay Plaintiff any wages, let alone the minimum wage, during the period July 1, 2010 up to and

22  including August 27, 2010. Plaintiff should have received wages during this period in the amount of

23  $20,609, or an amount according to proof at trial.

24        83.     Pursuant to Labor Code § 1194.2, Plaintiff is entitled to liquidated damages in an amount

25  equal to the wages unlawfully unpaid plus interest thereon. Plaintiff is also entitled to attorneys' fees,

26  costs and interest.

27  / / /

28  / / /

16
**COMPLAINT FOR DAMAGES**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement on all causes of action against all Defendants as follows:

1.     For special damages, including but not limited to, lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial, all in an amount set forth above and/or according to proof at the time of trial;

2.     For further special damages, including but not limited to, lost future earnings, benefits and other prospective damages in an amount set forth above and/or according to proof at the time of trial;

3.     For general damages in an amount set forth above and/or according to proof at the time of trial;

4.     For unpaid severance;

5.     For unpaid wages;

6.     For liquidated damages;

7.     For statutory penalties;

8.     For punitive damages;

9.     For interest;

10.    For reasonable attorneys' fees;

11.    For costs of suit; and

12.    For other appropriate relief.

DATED: May 12, 2011

Respectfully submitted,

LAW OFFICES OF SCOTT R. AMES
A PROFESSIONAL CORPORATION

HADSELL STORMER KEENY
    RICHARDSON & RENICK, LLP

By_____
    Dan Stormer
    Attorneys for Plaintiff
    DAVID MANGO

**COMPLAINT FOR DAMAGES**

1

## JURY TRIAL DEMAND

2

Plaintiff demands a jury trial on all issues so triable.

3

4     DATED: May 12, 2011          Respectfully submitted,

5                                    LAW OFFICES OF SCOTT R. AMES
A PROFESSIONAL CORPORATION

6

7                                    HADSELL STORMER KEENY
RICHARDSON & RENICK, LLP

8

                                   By

9                                       Dan Stormer
Attorneys for Plaintiff
DAVID MANGO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COMPLAINT FOR DAMAGES

**Exhibit A**

## AGREEMENT FOR EMPLOYMENT OF DIRECTOR OF BUILDING AND PLANNING – CITY OF MAYWOOD

This Agreement is made and entered into on August 14, 2007, by and between the City of Maywood, a municipal corporation of the State of California ("City"), and David Mango ("Employee"), who agree as follows:

### RECITALS

**WHEREAS**, the City desires to enter into a contract to employ Employee as Director of Building and Planning of the City of Maywood; and

**WHEREAS**, it is the desire of the parties hereto to provide the terms and conditions by which City shall receive and retain the services of Employee.

**NOW THEREFORE**, in consideration of the mutual covenants, herein contained, the parties agree as follows:

<u>Section 1.</u>     Duties

Employee will perform the normal functions and duties of the Director of Building and Planning on a full time basis as defined in Maywood Municipal Code sections 2-2.503 and 2-2.703.

<u>Section 2.</u>     Term

A.     This Agreement shall remain in effect until terminated by either of the parties as provided herein.

B.     Employee agrees to remain in the exclusive employ of the City and neither to accept other employment nor to become employed by any other employer until the agreement is terminated, provided, however, nothing contained herein shall be construed or interpreted to prohibit Employee from engaging in such occasional activities as teaching, writing, or consulting, which activities shall only be conducted apart from his normal or regular functions and duties.

<u>Section 3.</u>     Termination

A.     In the event the Employee desires to voluntarily terminate this Agreement, Employee will provide the City with thirty (30) day prior written notice of resignation. Employee will not be entitled to any severance under this provision. It is understood and agreed that any notice of resignation should be given as soon as practicable and in the best interest of the City.

B.     The City may terminate this Agreement at any time, with or without cause, upon thirty (30) days prior written notice to the Employee.

1.     In the event of termination by City for reasons of other than Just Cause as defined herein, the City will provide Employee with the choice of either reverting to his previous position as Building Inspector/Code Enforcement Officer or a severance pay equal to six (6) months of salary calculated at his highest monthly salary rate.

2.    Upon receipt of notification by the City of termination from the position of Director of Building and Planning, Employee shall have fourteen (14) working days to respond in writing as to his decision as to whether to accept severance pay or a reversion to his previous position of Building Inspector/Code Enforcement Officer at his previous salary and benefits for the position of Building Inspector/Code Enforcement Officer.

3.    The City may terminate the Employee from his position for Just Cause. The written notice shall specify the exact basis and cause for termination in accordance with the provisions for just cause herein. Employee shall have the right at his sole election to a hearing before the City Council to refute such basis prior to the effective date of termination.

4.    If the Employee's employment is terminated for Just Cause, then the City shall pay the Employee the compensation payable to the Employee for the month in which such termination occurs prorated to the date of the termination.

5.    Just Cause shall be defined as follows:

- Use of alcohol or other drugs in manner affecting employment performance.
- Conviction of a felony involving moral turpitude.
- Habitual absence from work.
- Physical incapacity to perform prescribed duties if no appropriate duties can be found fitting the needs of the City and employee's skills, expertise and abilities. Nothing herein shall relieve the City of its obligations under the Fair Employment and Housing Act and/or the Americans with Disabilities Act to provide Employee with a reasonable accommodation in the event he suffers from a disability as defined by either of those laws.
- Making of material false representations in connection with employment, sick leave, or retention by the City, including falsification of statements on the Application for Employment forms.

<u>Section 4.</u>    Compensation and Benefits

A.    Compensation shall be based on Employee's current base salary of $6,978.00 per month plus 7% longevity and 8% educational incentives. Effective July 1, 2007 ("Start Date"), Employee shall receive a salary increase of 4% annually. Employee shall receive the 4% increase per year for the first four years of the agreement. Salary increases shall calculated as an increase applied to the base salary specified herein.

B.    The City shall provide the Employee and his dependents with his choice of medical, dental, and vision plans as provided to all other City employees. The total amount of the premiums is to be paid by the City.

C.    The City shall provide at no expense to the Employee a $30,000 Life Insurance Policy payable to his beneficiaries upon his death.

D.    The Employee agrees to devote that amount of time and energy which is reasonably necessary for the Employee to faithfully perform the duties of Director of Building and Planning. The

Employee shall have the ability to accrue and use compensation time with the prior approval of the Chief Administrative Officer.

E.     The City shall provide the Employee with his current Employees' retirement system (P.E.R.S.) and safety retirement benefits (2% @ 55 formula). The City shall pay the Employee's entire contribution rate to the retirement fund. If other Employees receive an upgraded P.E.R.S retirement plan, this plan shall be upgraded to the same level.

F.     The Employee shall be entitled to accrue vacation leave at the annual rate of one hundred ninety-two (192) hours per year up to a maximum of two hundred eighty (280) hours.

G.     The Employee shall be entitled to accrue eight (8) hours of sick leave for every month of employment up to a maximum of four hundred eighty (480) hours. Any additional sick leave to be compensated in the manner described in the Maywood Personnel Rules.

H.     The Employee shall be entitled to forty (40) hours per year of personal leave time.

I.     The Employee shall be entitled to bereavement leave not to exceed three (3) days for the death of an immediate family member. Immediate family members shall include the employee's spouse, children, parents, and siblings, and spouse's parents.

J.     If the Employee resigns, retires or is terminated from employment, the Employee shall be paid for all accrued vacation time and sick time, on a dollar for dollar basis.

K.     Annually on December 1st Employee shall be compensated dollar for dollar for all sick leave accrued over 480 hours and all accrued vacation over 280 hours.

L.     The City shall provide the Employee with a cellular telephone and pager to be used for City Business.

M.     The Employee shall receive paid holidays (All holidays recognized by the City).

Section 5.     Indemnification.

The City shall defend, save harmless and indemnify the Employee against any tort, professional liability claim or demand or other legal action, whether groundless or otherwise, arising out of alleged acts or omissions occurring in the performance of the Employee's duties so long as the acts and omissions occurred within the course and scope of employment as articulated in this Agreement, the Maywood Municipal Code or applicable Personnel Rules and Regulations. The City will compromise and settle any such claim or suit and pay the amount of any settlement or judgment rendered thereon. Nothing in this Section shall be deemed to reduce the city's obligation to defend and/or indemnify Employee under applicable federal, state, or local law or to otherwise limit Employee's remedies to enforce the City's obligations herein. Nothing in this section shall be deemed to require the City to indemnify Employee from an award of punitive damages.

Section 6.     Other Terms and Conditions

A.     The City agrees to budget and to pay for the professional dues and subscriptions as is necessary for the Employee's participation in national, regional, state and local associations and

organizations necessary and desirable for his continued professional growth and advancement, and for the good of the City. Expenses for such dues and subscriptions in excess of One Thousand Dollars ($1,000.00) shall first be approved by City Council.

B.     The city shall not at any time during this Agreement reduce the salary, compensation, retirement, or other financial benefits of the Employee, directly or indirectly.

C.     The parties have cooperated in the drafting and preparation of this Agreement, and have received such independent legal advice and attorneys of their choice as they deem necessary. Hence, in any construction to be made of this Agreement, no provision hereof shall be construed against either party.

D.     This Agreement constitutes an election by the Employee to bargain away certain rights that may otherwise be the subject of a Memorandum of Understanding ("MOU") between the City and the Maywood Management Employees.

Section 7.     Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of California and any action in connection with or arising out of this Agreement or any dispute between the parties shall be commenced and maintained in the Superior Court of the State of California for the County of Los Angeles or the Central District of the United States District Court.

Section 8.     Entire Agreement

This Agreement contains the entire integrated agreement of the parties respecting the matters herein and therein set forth and supersedes all prior agreements between the same respecting such matters. In that connection each party specifically acknowledges that it has not received any promises, representations or assurances from the other party or any of the parties, agents or employees, which are not contained herein. No addition or modification of any term or provision hereof shall be effective unless set forth in writing and signed by both parties. This Agreement shall not violate or supersede any State or Federal Laws.

Section 9.     Assignment

A.     Any party shall not assign this Agreement. However, this Agreement shall be binding upon and inure to the benefit of Employee's heirs.

Section 10.     Notices.

Any notice required to be given under this Agreement shall be in writing and either served personally or sent prepaid, first class mail. Any such notice shall be addressed to the other party at the address set forth below. Notice shall be deemed communicated within 48 hours from the time of mailing if mailed as provided in this section.

If to City:

> Chief Executive Officer
> City of Maywood
> 4319 East Slauson Ave
> Maywood, CA 90270

If to Employee:

> David Mango
> 23677 Park Capri, Unit 17
> Calabasas, CA 91302

Section 11.    Severability

If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect. If any provision is held invalid or unenforceable in particular circumstances, it shall nonetheless remain in full force and effect in all other circumstances.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the 14th day of August, 2007.

City:

By: _____
Sergio Calderon, Mayor

Employee:

By: _____
David Mango

ATTEST:

_____
Erika Navarro, City Clerk

**Exhibit B**

## AGREEMENT

THIS AGREEMENT FOR EMPLOYMENT, ("Agreement") is made this 1st day of July, 2010, by and between the CITY OF BELL, a charter city (the "City") and David Mango, an individual (the "Employee") pursuant to the following terms and conditions:

### RECITALS

A. The City is a charter city located in the County of Los Angeles, State of California; and

B. The City provides various administrative services to the City of Maywood; and

C. The City desires the employment for services of Employee as the Director of Development Services of City to specifically service the City of Maywood; and

D. City and Employee desire to provide for certain procedures, benefits and requirements regarding this employment for Maywood services; and

E. Employee is willing to work as Director of Development Services of City under the terms and conditions recited herein,

NOW, THEREFORE, CITY AND EMPLOYEE agree to the following:

**Section 1. Novation**

The parties hereto intend by the execution of this Agreement to terminate and replace all prior and written agreements with the City of Maywood existing by and between the parties, through and including the effective date of this Agreement.

**Section 2. Conditions of Employment**

It is the intention of the parties that from and after the effective date of this Agreement that the terms and conditions of Employee's employment as Director of Development Services shall be governed exclusively by the provisions of this Agreement and applicable provisions of law.

**Section 3. Duties**

City agrees to retain Employee as the Director of Development Services of City to have and exercise all of the powers, duties and responsibilities set forth in the Maywood Municipal Code and other applicable laws and regulations, and to perform such other proper duties as assigned by the Chief Administrative Officer (CAO) of the City, or his designee.

## Section 4. Termination

The parties hereto may terminate this Agreement prior to the end of the Term, or any renewal period thereafter, in one of the following ways:

    a.  By mutual agreement of the parties; or

    b.  By the death or retirement of Employee; or

    c.  Employee is terminated for cause as a result of a conviction of a felony or for a crime involving moral turpitude. For purposes of this Agreement, the City shall have the burden of establishing by a preponderance of evidence that Employee was convicted of a felony or a crime of moral turpitude.

    d.  By the City without cause upon giving thirty (30) days written notice to Employee of the termination of this Agreement. In the event of such termination, Employee shall be entitled to receive a payment in the sum calculated at six times the then monthly salary of Employee.

Upon termination by either party for whatever reason, Employee shall be entitled to receive an amount equal to all accrued and unused sick and vacation leave to which Employee is entitled pursuant to the terms of this Agreement, which shall be calculated in accordance with the adopted and approved policies of the City as of the date of termination and at the applicable rate of pay as earned and accrued. All costs associated with such termination will be carried to Maywood as employee agrees to forego such severance from Maywood at this time.

## Section 5. Basic Salary

Employee shall be paid a basic salary of $5,152.47 per pay period, effective the date of this contract. The Basic Salary may be adjusted by the City Council, in its sole discretion, on or before each anniversary date of this Agreement.

Each adjustment to the Basic Salary as provided in this Section shall be subject to the condition that the City's Audited Statement of the General Fund Balance for the immediate past fiscal year prior to the adjustment evidences a positive cash position. In the event said Fund Balance for such fiscal year results in a negative cash position, the salary adjustment provided herein shall not take effect and Employee shall receive the previous amount of Basic Salary in effect prior to the adjustment as provided in the Agreement.

## Section 6. Employment Fringe Benefits

Employee shall be entitled to the following Fringe Benefits in accordance with this Agreement:

    a.  City agrees at its sole expense to provide Employee and his dependents with the opportunity to obtain all insurance benefits

provided to the City's unrepresented miscellaneous employees, including but not limited to, dental, medical, and vision plans; and

b. Employee shall be maintained by the City as a member of PERS pursuant to the contract between PERS and the City, as it now exists or may hereafter be amended, provided all Employee's costs to maintain such membership in said PERS shall be paid by the City; and

c. Employee shall, as of the effective date of this Agreement, accrue vacation leave and sick leave in such amounts according to his tenure with the City and calculated on the applicable basic salary rate; and

d. City may pay annual professional dues and fees on behalf of employee approved annually in the City budget by the City Council commencing July 1, 2010.

## Section 7. Expense Reimbursement

Employee shall be entitled to reimbursement for actual expenses incurred by his in the performance of his duties as Director of Development Services of City. All such expenses shall be reviewed and approved by the CAO or shall be paid pursuant to policies and or directives heretofore or hereafter issued by the City Council relating to such reimbursement.

## Section 8. Indemnification

City shall defend, hold harmless and indemnify Employee against any claim, demand, judgment or action, of any type or kind, arising out of any act or failure to act, by Employee, if such act or failure to act was within the course and scope of Employee's employment. City may compromise and settle any such claim or suit provided City shall bear the entire cost of any such settlement.

## Section 9. No Reduction of Benefits

City shall not at any time during the Term of this Agreement reduce Employee's Basic Salary or Fringe Benefits package to which Employee is entitled as provided in accordance with this Agreement, unless an identical across-the-board reduction in compensation and benefits is ordered for all other employees of City.

## Section 10. Effect of Agreement

The execution of this Agreement shall not operate as a waiver of any claims either party hereto may have against the other party arising out of their prior relationship of employer-employee.

## Section 11. Employee Evaluation

Subject to the CAO providing a recommendation and draft performance evaluation of Director of Development Services to the City Council on or before August 1 of each year (commencing August 1, 2010) of the Term, the City Council shall annually conduct an evaluation of the performance of Employee. Employee shall be fully informed of the details of such evaluation and shall have a reasonable opportunity to present his views, with reference to such evaluation, to the City Council. All materials and comments made as part of the evaluation process shall be and remain confidential.

### Section 12. Outside Employment

a.   During the Term of this Agreement, Employee shall not engage in any outside employment of any kind without the prior written consent of the CAO, and approval of the City Council. This shall be at the sole discretion of the City Council whether to grant or deny such consent, provided there is no conflict of interest of Employee due to such outside employment.

b.   Employee, after the termination of his employment or term of office, shall not for compensation during a period of two (2) years from the date of termination of employment, represent, aid, advise, counsel, consult or assist in representing any other person (other than City), before any court or public agency or any officer or employee thereof by making any formal or informal appearance, or by making any oral or written communication with the intent to influence, in connection with any proceeding if both of the following apply:

1)  The City of Bell or affiliated public entity, is a party or has a direct and substantial interest.
2)  The proceeding is one in which Employee formerly participated.

### Section 13. Notices

Any notice required or permitted by this Agreement shall be in writing and shall be personally served upon the party to be notified, or shall be deposited in the custody of the United States Postal Service, or its successor, postage prepaid, and addressed as follows:

To City:          City of Bell
                  6330 Pine Avenue
                  Bell, California 90201
                  Attn: CAO

To Employee:      David Mango
                  At his home address, which shall be
                  maintained on file with the City Clerk.

Notices shall be deemed given as of the date of personal service of five (5) consecutive calendar days following deposit of the same in the custody of the United States Postal Service.

### Section 14. Binding Effect

The provisions of this Agreement shall be binding upon the parties hereto and their respective successors in interest.

### Section 15. Section Headings

The section headings contained in this Agreement are for convenience and identification only and shall not be deemed to limit or define the contents of the sections to which they relate.

### Section 16. No Presumption Re: Drafter

The parties hereto acknowledge and agree that the terms and provisions of this Agreement have been negotiated and discussed between the parties, and this Agreement reflects their mutual agreement regarding the same. Because of the nature of such negotiations and discussions, it would be inappropriate to deem any party to be the drafter of this Agreement, and therefore, no presumption for or against validity or as to any interpretation hereof, based upon the identity of the drafter shall be applicable in interpreting or enforcing this Agreement.

### Section 17. Assistance of Legal Counsel

Each party to this Agreement warrants to each other party, as follows:

a. That each party either had the assistance of legal counsel or had legal counsel available to it, in the negotiation for and execution of this Agreement and all related documents; and

b. That each party has lawfully authorized the execution or has executed this Agreement.

### Section 18. Severability

This Agreement is severable, and if any provision or part hereof is judicially declared invalid, the remaining provisions shall remain in force and effect.

### Section 19. Modification

This Agreement shall not be modified except by written agreement of the parties.

### Section 20. Effective Date

This Agreement shall be effective as of the day and year first above written.

IN WITNESS WHEREOF, the parties have caused this Agreement for Employment to be executed as follows:

("City")
CITY OF BELL, CALIFORNIA

By: _____
    Oscar Hernandez, Mayor

Attest:

By: _____
    Rebecca Valdez, City Clerk

Approved as to Form:
City Attorney

By: _____

"Employee"

By: _____
    David Mango

Exhibit C

# LAW OFFICES OF SCOTT R. AMES

### A PROFESSIONAL CORPORATION

Writer's e-mail:
scott@scottameslaw.com

October 20, 2010

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Patricia Bravo-Valdez, City Clerk
Lilian Myers, City Manager
City of Maywood
4319 E. Slauson Ave
Maywood, CA 90270

    Re:    **David Mango v. City of Maywood et al.**

Dear Ms. Bravo-Valdez and Ms. Myers:

    Enclosed please find David Mango's claim for damages against the City of Maywood. Please direct all communications in this matter to me.

          Very truly yours,

          LAW OFFICES OF SCOTT R. AMES, P.C.

          SCOTT R. AMES

cc: David Mango (w/encls.)
encls.



1  LAW OFFICES OF SCOTT R. AMES
   A PROFESSIONAL CORPORATION
2  Scott R. Ames, Bar No. 146093
   11377 West Olympic Blvd., Suite 500
3  Los Angeles, CA 90064
   Tel: (310) 478-2500
4  Fax: (310) 478-2501
   scott@serratoreames.com
5

6

   Attorneys for Claimant
7  DAVID MANGO

8

9                    GOVERNMENTAL CLAIM FOR DAMAGES

10

11

12 DAVID MANGO,                          )    CLAIMANT DAVID MANGO'S
                                         )    CLAIM FOR DAMAGES AGAINST
13                Claimant,              )    THE CITY OF MAYWOOD
                                         )
14 vs.                                   )
                                         )
15                                       )
   CITY OF MAYWOOD, a municipal          )
16 corporation; and DOES 1-25            )
                                         )
17                                       )
                  Respondents.           )
18                                       )

19

20

21

22

23

24

25

26

27

28

                                    1

                              GOVERNMENTAL TORT CLAIM

1        Claimant David Mango ("Claimant") submits this governmental claim for damages

2  pursuant to Government Code section 900 et seq.

3  1.     **Claimant:**

4      David Mango

5      1757 Buckingham Road

6      Los Angeles, CA 90019

7

8  2.     **Notices to be sent to:**

9      Scott R. Ames, Esq.

10     Law Offices of Scott R. Ames, PC

11     11377 West Olympic Blvd., Suite 500

12     Los Angeles, CA 90064

13     Tel:    (310) 478-2500

14     Fax:   (310) 478-2501

15     email:  scott@scottameslaw.com

16

17  3.     **Facts:**

18      Claimant began working for the City of Maywood ("Maywood") on or about December 1,

19  1990. Claimant was promoted to interim Director of Building and Planning in 2000, and in 2001

20  Maywood removed the interim designation. Claimant remained Maywood's Director of Building

21  and Planning for the remainder of his employment.

22      On or about August 14, 2007, Claimant and Maywood entered into a written employment

23  agreement (the "First Contract"). Section 3(B) of the First Contract required Maywood to

24  provide Claimant with at least thirty (30) days written notice prior to Claimant's termination. In

25  addition, Section 3(B)(1) required Maywood to provide Claimant the choice of either reverting to

26  his previous position as Building Inspector/Code Enforcement Officer or severance pay equal to

27  six (6) months salary calculated at his highest monthly rate in the event of a termination without

28  Just Cause.

2

1   In or around March, 2010, Angela Spaccia ("Spaccia") became Maywood's Interim City

2 Manager, and she became Claimant's supervisor.  Spaccia was also serving as the Assistant City

3 Manager for the City of Bell.  On June 27, 2010, Maywood's Mayor Ana Rosa Rizo sent

4 Claimant a letter notifying him that he was being laid-off.  The letter specifically states "at no

5 fault of your own, the City of Maywood has had no other choice but to lay off a very loyal and

6 tenured staff."  On June 30, 2010, Spaccia sent Claimant a letter notifying him his employment

7 was terminated effective that day because Maywood's "current situation prevents it from

8 continuing [his] employment."  Accordingly, Maywood terminated Claimant's employment

9 without Just Cause.  Maywood, however, breached the terms of the First Contract by (1) failing

10 to provide Claimant with at least thirty (30) days written notice; and (2) failing to provide

11 Claimant with six (6) months severance or the option of reverting to his previous position as

12 Building Inspector/Code Enforcement Officer.  Claimant was earning approximately $9,000 per

13 month in base salary at the time Maywood terminated his employment.

14   On July 1, 2010, Claimant entered into a written employment agreement with the City of

15 Bell ("Bell") (the "Second Contract").  This agreement states that Bell was providing

16 administrative services for Maywood, and that Bell was employing Claimant as its Director of

17 Development Services to "specifically service the City of Maywood."  Accordingly, Maywood

18 and Bell were Claimant's joint employers.  Section 5 of the Second Contract provides that

19 Claimant would be paid a salary of $5,152.47 per pay period (or every two weeks).  In addition,

20 Section 4(d) provides that Claimant would receive thirty (30) days written notice in the event of

21 the termination of the agreement, and would "be entitled to receive a payment in the sum

22 calculated at six times the then monthly salary of Employee."

23   In middle to late July, 2010, Spaccia ceased working as Interim City Manager of

24 Maywood after her salary and benefits package at Bell was reported in the press.  Spaccia has

25 since been arrested for misappropriating public funds.  Claimant continued to perform his duties

26 and services for Maywood even though he had not been paid since July 1, 2010.

27   In August, 2010, Maywood hired Lilian Myers ("Myers") as Interim City Manager.  On or

28 about August 13, 2010, Claimant met with Myers.  During this meeting, Claimant told Myers

3

1  that he had a meeting with the United States Attorneys' Office on August 18, 2010, and that he
2  would be out of the office for several hours. When Myers inquired about the purpose of the
3  meeting, Claimant told her that he had made complaints to the FBI that Maywood City Council
4  members Felipe Aguirre ("Aguirre") and Thomas Martin ("Martin") were engaging in public
5  corruption, and that members of the United States Attorneys' office asked to meet with him to
6  further investigate these complaints. Myers was visibly upset when Claimant informed her that
7  he had made these complaints to the FBI and United States Attorneys' office, and when he
8  confirmed these complaints to her.

9       On August 17, 2010, an article appeared in the Los Angeles Times stating that "Maywood
10 is under scrutiny from the FBI and other law enforcement agencies over two city deals with ties
11 to [City Council member] Aguirre and his allies, ... and that investigators are also looking into
12 deals apparently unrelated to Aguirre." The article goes on to state that Claimant expressed
13 concerns about an organization called Union de Vecinos ("UV"), which has ties to Aguirre, and
14 in particular expressed concerns regarding UV's failure to account for approximately $360,000 it
15 received to run a lead abatement program in Maywood.

16      On August 18, 2010, Claimant met with FBI agents and members of the U.S. Attorneys'
17 office to discuss his complaints about public corruption regarding Aguirre and Martin.

18      On August 27, 2010, Myers called Claimant to her office. Also present was Herb Aguirre
19 ("H Aguirre"), a former Maywood police officer. Myers told Claimant that his services were no
20 longer needed and she terminated Claimant's employment. When Claimant asked for an
21 explanation, Myers refused to give one. Myers asked Claimant to pack his belongings and leave
22 the premises immediately, and had H Aguirre escort Claimant off the premises to his car.
23 Neither Maywood or Bell has paid Claimant any wages, compensation or other remuneration for
24 his services from and after July 1, 2010.

25
26
27
28

4

1  4.    <u>Claims and Damages:</u>

2       Presently, Claimant is entitled to damages for breach of the First and Second Contracts;

3  for failure to pay wages; for violation of Labor Code Sections 1102.5(b) and (d) based on

4  Maywood and Bell's retaliation against and termination of Claimant's employment because

5  Claimant disclosed information to a government or law enforcement agency, where he had

6  reasonable cause to believe that the information regarding public corruption by two Maywood

7  City Council members discloses a violation of state or federal statute, or a violation or

8  noncompliance with a state or federal rule or regulation; and for penalties, interest and attorneys'

9  fees thereon.  Claimant's damages are well in excess of $100,000, and as such, the claims arising

10  under these facts will be filed as an unlimited jurisdiction case.

11

12

13  DATED: October 20, 2010             LAW OFFICES OF SCOTT R. AMES, P.C.

14

15

16                   By _____

17                      SCOTT R. AMES
                            Attorneys for Claimant
                            DAVID MANGO

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENTAL TORT CLAIM

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 11377 West Olympic Blvd, Suite 500, Los Angeles, CA 90064.

On October 20, 2010, I served the foregoing documents described as **CLAIMANT DAVID MANGO'S CLAIM FOR DAMAGES AGAINST THE CITY OF MAYWOOD** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

> Patricia Bravo-Valdez, City Clerk
> Lilian Myers, City Manager
> City of Maywood
> 4319 E. Slauson Ave.
> Maywood, CA 90270

xx  **BY MAIL:** I deposited such envelope in the mail at Los Angeles, CA, The envelope was mailed with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

_____ **BY PERSONAL SERVICE:** by causing to be hand delivered, a true and correct thereof to the person and/or entity listed below:

_____ **BY FEDERAL EXPRESS:** I caused such document to be delivered by overnight mail to the offices of the addressee(s) by placing it for collection by Federal Express following ordinary business practice by my firm, to wit, that packages will either be picked up from my firm by Federal Express and/or delivered by my firm to the Federal Express office.

_____ **BY FACSIMILE TRANSMITTAL:** I sent by facsimile the above document on to the above individuals at the following facsimile number:

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Dated: October 20, 2010

BRIN KELLY

6

GOVERNMENTAL TORT CLAIM

**Exhibit D**

# LAW OFFICES OF SCOTT R. AMES

### A PROFESSIONAL CORPORATION

Writer's e-mail:
scott@scottameslaw.com

October 20, 2010

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Rebecca Valdez
City of Bell City Clerk
6330 Pine Ave
Bell, CA 90201

Re:   **David Mango v. City of Bell et al.**

Dear City Clerk:

Enclosed please find David Mango's claim for damages against the City of Bell.  Please direct all communications in this matter to me.

Very truly yours,

LAW OFFICES OF SCOTT R. AMES, P.C.

SCOTT R. AMES

cc: David Mango (w/encls.)
encls.

1  LAW OFFICES OF SCOTT R. AMES
   A PROFESSIONAL CORPORATION
2  Scott R. Ames, Bar No. 146093
   11377 West Olympic Blvd., Suite 500
3  Los Angeles, CA 90064
   Tel: (310) 478-2500
4  Fax: (310) 478-2501
   scott@serratoreames.com

5

6  Attorneys for Claimant
7  DAVID MANGO

8

9                    GOVERNMENTAL CLAIM FOR DAMAGES

10

11

12  DAVID MANGO,                          )   CLAIMANT DAVID MANGO'S
                                          )   CLAIM FOR DAMAGES AGAINST
13              Claimant,                  )   THE CITY OF BELL
                                          )
14  vs.                                    )
                                          )
15                                         )
    CITY OF BELL, a municipal corporation; )
16  and DOES 1-25                          )
                                          )
17                                         )
                Respondents.               )
18                                         )

19

20

21

22

23

24

25

26

27

28

                                  1

1   Claimant David Mango ("Claimant") submits this governmental claim for damages

2   pursuant to Government Code section 900 et seq.

3   1.   **Claimant:**

4   David Mango

5   1757 Buckingham Road

6   Los Angeles, CA 90019

7

8   2.   **Notices to be sent to:**

9   Scott R. Ames

10   Law Offices of Scott R. Ames, PC

11   11377 West Olympic Blvd., Suite 500

12   Los Angeles, CA 90064

13   Tel:   (310) 478-2500

14   Fax:   (310) 478-2501

15   email:  scott@scottameslaw.com

16

17   3.   **Facts:**

18   Claimant began working for the City of Maywood ("Maywood") on or about December 1,

19   1990. Claimant was promoted to interim Director of Building and Planning in 2000, and in 2001

20   Maywood removed the interim designation. Claimant remained Maywood's Director of Building

21   and Planning for the remainder of his employment.

22   On or about August 14, 2007, Claimant and Maywood entered into a written employment

23   agreement (the "First Contract"). Section 3(B) of the First Contract required Maywood to

24   provide Claimant with at least thirty (30) days written notice prior to Claimant's termination. In

25   addition, Section 3(B)(1) required Maywood to provide Claimant the choice of either reverting to

26   his previous position as Building Inspector/Code Enforcement Officer or severance pay equal to

27   six (6) months salary calculated at his highest monthly rate in the event of a termination without

28   Just Cause.

2

1    In or around March, 2010, Angela Spaccia ("Spaccia") became Maywood's Interim City

2    Manager, and she became Claimant's supervisor. Spaccia was also serving as the Assistant City

3    Manager for the City of Bell. On June 27, 2010, Maywood's Mayor Ana Rosa Rizo sent

4    Claimant a letter notifying him that he was being laid-off. The letter specifically states "at no

5    fault of your own, the City of Maywood has had no other choice but to lay off a very loyal and

6    tenured staff." On June 30, 2010, Spaccia sent Claimant a letter notifying him his employment

7    was terminated effective that day because Maywood's "current situation prevents it from

8    continuing [his] employment." Accordingly, Maywood terminated Claimant's employment

9    without Just Cause. Maywood, however, breached the terms of the First Contract by (1) failing

10    to provide Claimant with at least thirty (30) days written notice; and (2) failing to provide

11    Claimant with six (6) months severance or the option of reverting to his previous position as

12    Building Inspector/Code Enforcement Officer. Claimant was earning approximately $9,000 per

13    month in base salary at the time Maywood terminated his employment.

14    On July 1, 2010, Claimant entered into a written employment agreement with the City of

15    Bell ("Bell") (the "Second Contract"). This agreement states that Bell was providing

16    administrative services for Maywood, and that Bell was employing Claimant as its Director of

17    Development Services to "specifically service the City of Maywood," Accordingly, Maywood

18    and Bell were Claimant's joint employers. Section 5 of the Second Contract provides that

19    Claimant would be paid a salary of $5,152.47 per pay period (or every two weeks). In addition,

20    Section 4(d) provides that Claimant would receive thirty (30) days written notice in the event of

21    the termination of the agreement, and would "be entitled to receive a payment in the sum

22    calculated at six times the then monthly salary of Employee."

23    In middle to late July, 2010, Spaccia ceased working as Interim City Manager of

24    Maywood after her salary and benefits package at Bell was reported in the press. Spaccia has

25    since been arrested for misappropriating public funds. Claimant continued to perform his duties

26    and services for Maywood even though he had not been paid since July 1, 2010.

27    In August, 2010, Maywood hired Lilian Myers ("Myers") as Interim City Manager. On or

28    about August 13, 2010, Claimant met with Myers. During this meeting, Claimant told Myers

3

1  that he had a meeting with the United States Attorneys' Office on August 18, 2010, and that he

2  would be out of the office for several hours. When Myers inquired about the purpose of the

3  meeting, Claimant told her that he had made complaints to the FBI that Maywood City Council

4  members Felipe Aguirre ("Aguirre") and Thomas Martin ("Martin") were engaging in public

5  corruption, and that members of the United States Attorneys' office asked to meet with him to

6  further investigate these complaints. Myers was visibly upset when Claimant informed her that

7  he had made these complaints to the FBI and United States Attorneys' office, and when he

8  confirmed these complaints to her.

9      On August 17, 2010, an article appeared in the Los Angeles Times stating that "Maywood

10  is under scrutiny from the FBI and other law enforcement agencies over two city deals with ties

11  to [City Council member] Aguirre and his allies, ... and that investigators are also looking into

12  deals apparently unrelated to Aguirre." The article goes on to state that Claimant expressed

13  concerns about an organization called Union de Vecinos ("UV"), which has ties to Aguirre, and

14  in particular expressed concerns regarding UV's failure to account for approximately $360,000 it

15  received to run a lead abatement program in Maywood.

16      On August 18, 2010, Claimant met with FBI agents and members of the U.S. Attorneys'

17  office to discuss his complaints about public corruption regarding Aguirre and Martin.

18      On August 27, 2010, Myers called Claimant to her office. Also present was Herb Aguirre

19  ("H Aguirre"), a former Maywood police officer. Myers told Claimant that his services were no

20  longer needed and she terminated Claimant's employment. When Claimant asked for an

21  explanation, Myers refused to give one. Myers asked Claimant to pack his belongings and leave

22  the premises immediately, and had H Aguirre escort Claimant off the premises to his car.

23  Neither Maywood or Bell has paid Claimant any wages, compensation or other remuneration for

24  his services from and after July 1, 2010.

25

26

27

28

4

1   4.    <u>Claims and Damages:</u>

2        Presently, Claimant is entitled to damages for breach of the First and Second Contracts;

3   for failure to pay wages; for violation of Labor Code Sections 1102.5(b) and (d) based on

4   Maywood and Bell's retaliation against and termination of Claimant's employment because

5   Claimant disclosed information to a government or law enforcement agency, where he had

6   reasonable cause to believe that the information regarding public corruption by two Maywood

7   City Council members discloses a violation of state or federal statute, or a violation or

8   noncompliance with a state or federal rule or regulation; and for penalties, interest and attorneys'

9   fees thereon.  Claimant's damages are well in excess of $100,000, and as such, the claims arising

10  under these facts will be filed as an unlimited jurisdiction case.

11

12

13  DATED: October 20, 2010                   LAW OFFICES OF SCOTT R. AMES, P.C.

14

15

16  By _____
                SCOTT R. AMES
17              Attorneys for Claimant
                DAVID MANGO
18

19

20

21

22

23

24

25

26

27

28

GOVERNMENTAL TORT CLAIM

1

<u>PROOF OF SERVICE</u>

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4          I am employed in the county of Los Angeles, State of California.  I am over the
age of 18 and not a party to the within action.  My business address is 11377 West Olympic
5    Blvd, Suite 500, Los Angeles, CA 90064.

6          On October 20, 2010, I served the foregoing documents described as
**CLAIMANT DAVID MANGO'S CLAIM FOR DAMAGES AGAINST THE CITY OF**
7    **BELL** on the interested parties in this action by placing a true and correct copy thereof in a
sealed envelope addressed as follows:

8

9                          Rebecca Valdez
                        City of Bell City Clerk
10                         6330 Pine Ave
                          Bell, CA 90201

11

12

13    xx_____        **BY MAIL:** I deposited such envelope in the mail at Los Angeles, CA.  The
envelope was mailed with postage thereon fully prepaid.  I am aware that on motion of the party
14    served, service is presumed invalid if postal cancellation date or postage meter date is more than
one day after date of deposit for mailing.

15

16    _____        **BY PERSONAL SERVICE:** by causing to be hand delivered, a true and correct
thereof to the person and/or entity listed below:

17

18    _____        **BY FEDERAL EXPRESS:** I caused such document to be delivered by overnight
mail to the offices of the addressee(s) by placing it for collection by Federal Express following
19    ordinary business practice by my firm, to wit, that packages will either be picked up from my
firm by Federal Express and/or delivered by my firm to the Federal Express office.

20

21    _____        **BY FACSIMILE TRANSMITTAL:** I sent by facsimile the above document on
to the above individuals at the following facsimile number:

22

23          I declare under penalty of perjury under the laws of the state of California that the
foregoing is true and correct.

24

25    Dated: October 20, 2010                    _____
                                              ERIN KELLY

26

27

28

6

GOVERNMENTAL TORT CLAIM

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DAVID MANGO | CITY OF MAYWOOD, a municipal corporation; CITY OF BELL, a municipal corporation; LILIAN MYERS, individually and in her official capacity; EDWARD VARELA, individually and in his official capacity; et al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Law Offices of Scott R. Ames    Hadsell, Stormer, Keeny, et al.<br>11377 W. Olympic Blvd. #500    128 N. Fair Oaks Avenue<br>Los Angeles, CA  90064    Pasadena, CA  91103 | Kimberly E. Colwell, Esq. and Kevin E. Gilbert, Esq.<br>MEYERS, NAVE, RIBACK, SILVER & WILSON<br>555 12th Street, Suite 1500, Oakland, CA  94607<br>Telephone: (510) 808-2000 / Facsimile: (510) 444-1108 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☑ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No    ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fourth and Fifth Causes of Action (42 U.S.C. § 1983)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☑ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV11 05641

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
 ☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
 ☑  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note**: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): ~~_signature_~~    Date  July 8, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV11- 5641 GW (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY